UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORA MITCHELL, personal representative
of the Estate of Robert Mitchell,

    Plaintiff,                                          Case No. 09-11480

v.                                                       Hon. John Corbett O'Meara

CITY OF WARREN, *et al.*,

    Defendants.
_____/

## ORDER GRANTING MOTION
## FOR DETERMINATION OF LIEN

Before the court is the motion of Fieger, Fieger, Kenney, Johnson & Giroux, P.C. ("the Fieger Firm") for determination of lien, filed September 10, 2012. Plaintiff filed a response on September 12, 2012; the Fieger Firm filed a reply on September 17, 2012. Plaintiff filed a motion for leave to file an amended affidavit on September 27, 2012. The court did not hear oral argument.

## BACKGROUND FACTS

Plaintiff Cora Mitchell is the personal representative of the estate of her son, Robert Mitchell, who died after a Warren police officer deployed a Taser into his chest. Robert Mitchell died on April 10, 2009. On April 11, 2009, Cora Mitchell retained the Fieger Firm to represent the estate on a contingent fee basis. On April 20, 2009, the Fieger Firm, through attorney Paul Broschay, filed this action against the City of Warren, alleging a violation of 42 U.S.C. § 1983.

Thereafter, Plaintiff alleges that she tried several times to reach Broschay and Geoffrey Fieger by phone, but that they did not return her calls. See Pl.'s Ex. B. The Fieger Firm disputes

that it was inattentive to the file.[1]  Dissatisfied, Plaintiff contacted attorney Byron H. Pitts to represent the estate.  On June 2, 2009, Plaintiff sent a letter to Broschay, stating that she had retained Pitts and that she no longer wanted the Fieger Firm to represent the estate.

Plaintiff filed a motion to remove the Fieger Firm as counsel of record on June 26, 2009; the Fieger Firm filed a response in opposition on July 13, 2009.  The court granted the motion on July 14, 2009.  On July 17, 2009, the Fieger Firm filed a notice of attorney lien.

Approximately three years later, Plaintiff settled with the City of Warren.  The court scheduled a hearing for approval of the settlement on September 13, 2012.  Prior to the hearing, the Fieger Firm filed its motion for determination of lien.  The court approved the settlement on September 13, 2012, leaving open the issue of the Fieger Firm's lien.

## LAW AND ANALYSIS

"The law creates a lien of an attorney upon the judgment or fund resulting from his services." Polen v. Reynolds, 222 Mich. App. 20, 23 (1997) (citation omitted).[2]  In general, a lawyer who is discharged by a client may recover attorney fees on a quantum meruit basis. Id. at 24.  "Like other persons who provide services for a fee, an attorney who is discharged before completing contacted-for work is generally entitled to payment for valuable services rendered

---

[1] In an affidavit, Broschay states that he had "several conversations" with Cora Mitchell, who "asked for money for the funeral.  I explained we could not pay her.  Shortly thereafter, I received a fax from Bryon [sic] Pitts saying he was substituting as counsel for us." Affidavit of Paul W. Broschay (Docket No. 102-2).

[2] The court may exercise supplemental jurisdiction over this attorney fee dispute.  See Kalyawongsa v. Moffett, 105 F.3d 283, 287-88 (6th Cir. 1997) ("[A]lthough attorneys' fee arrangements are contracts under state law, the federal court's interest in fully and fairly resolving the controversies before it requires courts to exercise supplemental jurisdiction over fee disputes that are related to the main action.").

before the discharge." Id. at 27. The Michigan Court of Appeals concluded "that as long as a discharged attorney does not engage in disciplinable misconduct prejudicial to the client's case or conduct contrary to public policy that would disqualify any quantum meruit award, a trial court should take into consideration the nature of the services rendered by an attorney before his discharge and award attorney fees on a quantum meruit basis." Id.

These legal principles are consistent with the contract entered into between the Fieger Firm and Cora Mitchell, which provides: "In the event the Firm is discharged by the Client(s) *without cause* or in the event that the Firm terminates its services due to some occurrence which is not the fault of the Firm's, the contingency fee portion of this agreement will be held for naught and that the Firm will be entitled to a fee based on quantum meruit." Agreement at ¶ 11 (emphasis added).

Plaintiff argues that she terminated the Fieger Firm for cause and that, therefore, the firm is not entitled to a quantum meruit recovery. Although "cause" is not defined in the parties' agreement, the case law suggests that a quantum meruit fee should be awarded unless the attorney engages "in disciplinable misconduct prejudicial to the client's case or conduct contrary to public policy." Polen, 222 Mich. App. at 27. Plaintiff contends that she terminated the Fieger Firm after she tried to reach Broschay and Fieger by phone on several occasions, and neither attorney returned her calls. Assuming the truth of these allegations, under the circumstances presented here they do not rise to the level of "disciplinable misconduct prejudicial to the client's case or conduct contrary to public policy" such that the Fieger Firm should be disqualified from receiving a quantum meruit fee. There is no allegation, for example, that this failure to communicate prejudiced Plaintiff's case, which was in its earliest stages.

The remaining question is the appropriate quantum meruit fee. The Fieger Firm argues that it should receive 33.33% of the attorney's fees recovered in this case because it "performed 33.33% of the work." Br. at 8. The record demonstrates that this statement is grossly exaggerated. The Fieger Firm represented Plaintiff from April 11, 2009, until she discharged it on June 2, 2009, a time period of about seven weeks. The Fieger Firm met with the client, prepared a five-page complaint, began an investigation, and drafted minimal discovery requests. The vast bulk of the legal work on this case – including amended complaints, extensive discovery, and motion practice over a period of three years – was undertaken by successor counsel. The court sees no basis to award the Fieger Firm one-third of the attorney fees obtained in this matter.

In the alternative, the Fieger Firm seeks to be compensated for the hours attorney Broschay worked on the case. The Fieger Firm seeks $37,350 in attorney's fees, representing 62.25 hours at $600 per hour. Lacking contemporaneous time records, the Fieger Firm has endeavored to "recreate" the hours Broschay spent on the case. However, no one at the Fieger Firm has attested to firsthand knowledge of those hours, as Broschay is no longer with the firm. Moreover, the Fieger Firm's attempt to reconstruct these hours is inflated on its face. For example, the firm's "itemized bill for costs" contains the following entries:

| Date | Description | Hours |
|------|-------------|-------|
| 4/20/09 | Summons & Complaint [5 pages] | 5.00 [hours] |
| 4/20/09 | Review of Issuance of Summons | 1.00 |
| 4/21/09 | Review of Notice of Fee Not Paid | .25 |
| 4/21/09 | Review of Notice of Fee Received | 1.00 |
| 4/20/09 | Issuance of Summons | 1.00 |
| 4/24/09 | Return of Service/Summons & Complaint | 1.00 |
| 4/30/09 | Review of Appearance by Leach & Gillooly | .25 |

| | | |
|---|---|---|
| 5/12/09 | Review of Answer to Complaint and Affirmative Defenses [7 pages] | 2.00 |
| 5/12/09 | Prep of Plaintiff's Reply to Defendant's Special and/or Affirmative Defenses [1 paragraph boilerplate] | 2.00 |
| * * * | | |
| 5/21/09 | Prep of Plaintiff's Request for Production of Documents [1 paragraph] | 2.00 |

See Docket No. 95-5 (original), Docket No. 102-3 (revised).

Based upon the court's experience in private practice, it is unreasonable for an attorney to take an hour to issue a summons, an hour to review the issuance of a summons, an hour to review a return of service, or an hour to review a notice that the filing fee was paid. It is also unreasonable to spend two hours to draft a paragraph in reply to Defendant's affirmative defenses and another two hours drafting a one-paragraph document request. The court could go on, but these examples are sufficient to demonstrate that the Fieger Firm's version of the hours actually spent on this matter is not credible. A review of the court filings and discovery prepared by the Fieger Firm suggests that the hours claimed should be reduced by 50% to 31, which is reasonable in light of the work generated and the fact that the Fieger Firm was replaced very early in the litigation. See generally Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").

The Fieger Firm seeks an hourly rate of $600 for attorney Broschay, who has 28 years of experience and who was a senior associate at the time. "A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." Wayne v. Village of

Sebring, 36 F.3d 517, 533 (6th Cir. 1994).  A useful guideline in determining a reasonable hourly rate is the "prevailing market rate . . . in the relevant community," Blum v. Stenson, 465 U.S. 886, 895 (1984), defined as "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." Adcock-Ladd v. Sec'y of Treasury, 227 F.3d 343, 350 (6th Cir. 2000).

      According to the State Bar of Michigan 2010 Economics of Law Practice Summary Report, the average hourly rate of a senior associate is $222, the average hourly rate of an attorney with 26 to 30 years of experience is $248, and the average hourly rate for a civil rights attorney is $255.  Based upon this information, the court finds that a reasonably hourly rate is $250, for a total fee of $7,750.  The court finds no basis to either increase or decrease this award.

      The Fieger Firm also seeks to recover costs in the amount of $4,731.91.  See Docket No. 95-3.  Plaintiff agrees that the firm is entitled to recover its costs, but she disputes the amount.  Plaintiff notes that when the Fieger Firm provided the file to successor counsel, attorney Ven Johnson attached a bill of costs and stated that the amount due was $2,048.32.  See Pl.'s Ex. A.  The most recent version of the bill of costs (seeking $4,731.91) contains a line item for "Howard T. Linden, Esq. probate" in the amount of $2,500.  The bill of costs originally submitted to Plaintiff does not include this charge.  The Fieger Firm contends that this charge is to compensate attorney Linden, who set up the estate of Robert Mitchell.  This is not a "cost" item, therefore, but additional attorney fees.  With only the vague and limited information provided, the court is unable to discern the reasonableness of this fee.  See Reply Br. at 3.  Accordingly, this item will be disallowed.  The court will award the original amount claimed by the Fieger

Firm on July 17, 2009: $2,048.32.

## **ORDER**

Therefore, IT IS HEREBY ORDERED that the Fieger Firm's motion for determination of lien is GRANTED.

IT IS FURTHER ORDERED that the Fieger Firm is entitled to $7,750 in fees and $2,048.32 in costs in this matter.

IT IS FURTHER ORDERED that Plaintiff's motion for leave to file an amended affidavit is DENIED.

                                                                   s/John Corbett O'Meara
                                                                   United States District Judge

Date: October 26, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, October 26, 2012, using the ECF system.

                                                                   s/William Barkholz
                                                                   Case Manager